■ In the Matter of the Estate of JOHN T. BUCKLEY, Deceased. COUNTY TRUST COMPANY, as Executor of JOHN T. BUCKLEY, Deceased, Appellant; THOMAS J. RIORDAN, Respondent.

APPEAL from a decree of the Bronx County Surrogate's Court, entered February 1, 1962, which dismissed a proceeding to discover assets and directed appellant, as executor, to deliver to respondent a savings account passbook.

Decree of Surrogate, Bronx County, which dismissed petitioner's discovery proceeding, reversed on the law and the facts and respondent directed to execute such instruments as prayed for in the prayer for relief.

EAGER, J. (dissenting). I would affirm the decree of the Surrogate's Court dismissing the discovery proceeding. It appears that the decedent had duly signed and delivered the joint account agreement for the placing of the New Jersey savings and loan association account in the joint names of decedent and the respondent. This is undisputed. The issue here was whether the account was changed into a joint account on the day prior to the death of the decedent or two days following his death. The Surrogate, who tried the issue without a jury, concluded, "The court believes the testimony of the respondent and his witnesses to the effect that the transaction was completed at the bank prior to the death of the decedent, namely, on April 11, 1960."

Where, as here, there was a sharp conflict in the testimony, the issue of credibility was for the Surrogate. (*Kelly* v. *Watson Elevator Co.*, 309 N. Y. 49, 51.) "The credibility of the witnesses, the reconciliation of conflicting statements, a determination of which should be accepted and which rejected, the truthfulness and accuracy of the testimony, whether contradictory or not, were issues for the trier of the facts (*Lee* v. *City Brewing Corp.*, 279 N. Y. 380, 384). The memory, motive, mental capacity, accuracy of observation and statement, truthfulness and other tests of the reliability of witnesses can be passed upon with greater safety by a trial judge who sees and hears the witnesses than by appellate judges who simply read the printed record" (*Barnet* v. *Cannizzaro,* 3 A D 2d 745, 747; *63 Building Corp.* v. *Schlacter,* 11 A D 2d 743).

Here, the Surrogate was particularly careful in his search for the truth, interrupting testimony from time to time to ask pertinent questions of the witnesses. His determination of the vital issue of credibility should stand.

Moreover, in my opinion, this court, in taking upon itself the resolving of issues of credibility, has reached a determination which is contrary to the weight of the evidence. There was definite and unequivocal testimony by the respondent and his witnesses that the respondent went to the office of the association on April 11 and had the account changed. Respondent testified that he "did not appear at that bank on April 14; it was April 11"; that he was "Definitely not" anywhere near Bayonne (the office of the association) on Holy Thursday, April 14. Furthermore, when recalled by the court at the close of the case, and after extended examination by the court, in answer to the court's question as to whether he was positive that it was the 11th when he went to the bank, he replied, "Exactly the 11th". The respondent's father testified that, on April 11, the decedent said to respondent "everything is all fixed now; the book is yours" and that he then saw the book with the son's name on it. The respondent's mother testified that she saw the book on the night of April 11, when respondent came back from the bank, and that she saw his name on it; that this was the evening that a priest came in to hear Mr. Buckley's confession; and, in answer to a question by the court, she said that she saw the book on the night of April 11 "when Tommy [the respondent] took home the book from the bank". She further testified that on April 14 the respondent was with her at home in the morning and later at the funeral parlor at Mt. Vernon (a long way from Bayonne), and that he did not leave her during the day. The respondent's brother also testified that the respondent showed him the bankbook on the 11th and that he saw respondent's name on it.

It is true that respondent and his witnesses were interested witnesses but the record does not justify our holding that they were deliberately fabricating their testimony. In any event, the association officer, who was the only witness called by the executor, was in a sense interested in that he was concerned in sustaining the authenticity of the date entered on the association records. In reading his testimony, one reaches the conclusion that he was principally relying upon the date so entered as the basis for his testimony that the respondent came to the association office with the book on April 14; and it is important to note that the accuracy of the record was not verified. The secretary who made it was not called as a witness.

I would sustain the determination of the Surrogate as a proper resolution of the issue of credibility and, in any event, as in accord with the greater weight of the evidence.

Breitel, J. P., Rabin, McNally and Steuer, JJ., concur in decision; Eager, J., dissents and votes to affirm in opinion.

Decree of Surrogate, Bronx County, which dismissed petitioner's discovery proceeding, reversed on the law and the facts and respondent directed to execute such instruments as prayed for in the prayer for relief, with costs to appellant payable out of the estate. Submit findings in accord with this decision. We find the determination in favor of respondent to be against the weight of the credible evidence. Respondent claims the right to a deposit in a savings loan association by right of survivorship. The pertinent question is whether the account was transferred on the books of the association on April 11, 1960, one day prior to the death of deceased, or on April 14, 1960, two days thereafter. Respondent relies on the testimony of witnesses all of whom are closely related to respondent. This testimony fixes the date of transfer on a day when respondent was working at a considerable distance from the association's office and when it was extremely unlikely that he could have accomplished his purpose in the time he could devote to it. Opposed to this is the disinterested testimony of the association's officer and the unimpeached proof of its records. Further, these show the transaction to have taken place on a day when respondent would not normally have been at his job or attending school and when he was free to make the required journey. Settle order on notice. [32 Misc 2d 928.]